USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 30, 2010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NU-CHAN, LLC,                                                    :
                                                                 :
              Plaintiff,
                                                                 :       09 Civ. 00477 (PAC)
   - against -                                                      :       ORDER
                                                                 :
20 PINE STREET LLC,                                              :
                                                                 :
              Defendant.                                       :
-----------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

       Plaintiffs Nu-Chan, LLC ("Nu-Chan") and Pei-Ching Chiu ("Chiu") (together, "Plaintiffs") bring actions against Defendant 20 Pine Street LLC ("20 Pine" or "Defendant") to rescind their respective condominium purchase agreements and have their deposits returned. Plaintiffs move for summary judgment, contending that they have a right to such relief because Defendant failed to comply with the requirements of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et. seq. ("ILSFDA" or the "Act"). Defendant also moves for summary judgment, contending that (1) ILSFDA does not apply to condominiums; (2) even if ILSFDA does apply to condominiums, the condominiums at issue are exempt under the "improved lot exemption"; and (3) even if the condominiums are not exempt from ILSFDA, Plaintiffs claims are time-barred.  For the following reasons, Plaintiff's motion for summary judgment is DENIED, and Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

1

**BACKGROUND**

The 20 Pine Street Condominium, located in lower Manhattan, consists of over 400 residential units, which Defendant marketed as part of an offering plan while the building was being converted from an office building to a residential property. (Def. 56.1 Stmt. ¶¶ 1, 4; Pl. 56.1 Resp. ¶¶ 1, 4.) On January 20, 2006, Michael Nucatola and 20 Pine entered into an agreement under which Nucatola would purchase Unit No. 411 for $670,000. (Fleishman Aff., Ex. E.) Nucatola later assigned his rights under the purchase agreement to Nu-Chan, an LLC in which he and a business partner, Jeffrey Chan, were the sole members. (Def. 56.1 Stmt. ¶¶ 41–46; Pl. 56.1 Resp. ¶¶ 41–46.) On June 19, 2006, Chiu entered into a purchase agreement with 20 Pine to purchase Unit 605 for $925,000. (Fleishman Aff., Ex. E.) In total, Chiu paid 20 Pine $138,750 in deposits on Unit 605, while Nucatola paid $100,500 in deposits on his unit. (Fleishman Aff. Ex. D, E.)[1]

In early 2009, both Nu-Chan and Chiu sent setters to Defendant, demanding rescission of their respective purchase agreements, claiming that they had such a right under § 1703(c) of ILSFDA because Defendant had not provided each plaintiff with a property report pursuant to the statute. (Fleishman Aff, Ex. I, J.) Defendant rejected these demands and Plaintiffs subsequently brought the instant lawsuits.

**LEGAL STANDARDS**

**A. Summary Judgment Standard**

Summary judgment is appropriate where the record demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under

---

[1] According to Plaintiffs, Chiu also purchased two storage units for $16,000. (Pl. 56.1 Stmt. ¶ 12.)

governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to relief. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The evidence on each material element must be sufficient to entitle the movant to relief as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). Once the moving party has made an initial showing that no genuine issue of material fact remains, the nonmoving party may not refute this showing solely by means of "[c]onclusory allegations, conjecture, and speculation," Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (internal citations and quotations omitted), but must instead present specific evidence in support of its contention that there is a genuine dispute as to material facts. Fed. R. Civ. P. 56(e).  The Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)).

The same standard of review applies when the court is faced with cross-motions for summary judgment. Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).  Each party's motion must be reviewed on its own merits, and the Court must draw all reasonable inferences against the party whose motion is under consideration. Id.

**B. ILSFDA**

Congress passed ILSFDA in order "to protect purchasers from unscrupulous sales of undeveloped home sites, frequently involving out-of-state sales of land purportedly suitable for development, but actually under water or useful only for grazing." Beauford v. Helmsley, 740 F. Supp. 201, 209 (S.D.N.Y. 1990) (quoting Winter v. Hollingsworth Properties, 777 F.2d 1444, 1447 (11th Cir. 1985)). While the target appears to have been sales of new land, "Congress made

3

the statute applicable to all lots." An v. Leviev Fulton Club, LLC, No. 09 cv 1937, 2010 WL 3291402, *1 (S.D.N.Y. August 10, 2010).

Under § 1703(c) of ILSFDA, sellers of over 100 lots of otherwise non-exempt real property must provide purchasers with a property report prior to the signing of any purchase agreement. 15 U.S.C. § 1702-1703; see Winter, 777 F.2d at 1447-48.  If the seller does not comply with this requirement, and the transaction is not exempt from coverage by the Act under § 1702, the buyer has an automatic right, within two years of signing the agreement, to rescind the purchase agreement and a return of the deposit. 15 U.S.C. § 1703(c).  ILSFDA requires the seller to provide, in the purchase agreement, written notice of the aforementioned automatic rescission right.  Id.  In addition, a plaintiff may bring an action under ILSFDA for damages or equitable relief to enforce rights under § 1703. 15 U.S.C. § 1709(a)-(b).

ILSFDA has multiple time limitation elements. First, as stated above, a buyer must demand rescission under § 1703(c) within two years of the date the parties signed the agreement. In addition, however, there is a general three year statute of limitations that applies to all claims made under the statute. 15 U.S.C. § 1711.

There are several kinds of transactions that are exempt from the ILSFDA requirements. 15 U.S.C. § 1702(a)-(b). At issue here is the "improved lot" exemption, which states that "the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years" is exempt from the Act's requirements. 15 U.S.C. § 1702(a)(2).

## ANALYSIS

### A. ILSFDA Applies to the Condominium Units at Issue

*1. ILSFDA applies to condominiums generally*

Exceptions aside, the "property report" requirement of ILSFDA applies to the sale, through interstate commerce, of 100 or more undeveloped lots pursuant to a common promotional plan. 15 U.S.C. § 1702-1703; see Winter, 777 F.2d 1444 at 1447-48.  While it appears that Congress originally passed the law "to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers," Flint Ridge Devel. Co. v. Scenic Rivers Ass'n of Okla., 426 U.S. 776, 778 (1976), the United States Department of Housing and Urban Development ("HUD") has, for many years, construed the term "lots" in ILSFDA to include all interests in real estate — including condominium units. See, e.g., 61 Fed. Reg. 13,596 (March 27, 1996) ("Lot means any portion, piece, division, unit or undivided interest in land if such interest includes the right to exclusive use of a specific portion of the land or unit. This applies to the sale of a condominium . . . as well as a traditional lot."); 38 Fed. Reg. 23,866 (Sept. 4, 1973).[2]

The Second Circuit has not ruled on this issue; and Defendants ask this Court to engage in a new analysis of the definition of the word "lot."  This analysis, however, is unnecessary. Several decisions of Southern District of New York, many of them recent, have accepted HUD's analysis, and applied ILSFDA to condominium units.  See, e.g. Bacolitsas v. 86th & 3rd Owner, LLC, No. 09 Civ. 7158, 2010 WL 3734088, *4 (S.D.N.Y. Sept. 21, 2010); An, 2010 WL 3291402, *1 (S.D.N.Y. August 10, 2010) ("[C]ondominium sales are within the scope of the

---

[2] In addition, a letter — submitted by *Defendants* — from the Office of RESPA (Real Estate Settlement Procedures Act) and Interstate Land Sales (the HUD office charged with enforcing ILSFDA) specifically states that "condominium developments are covered by ILSFDA and . . . a condominium unit is considered to be a lot." (Abraham Aff., Ex A.)

statute and the protections of the ILSFDA are to be construed broadly, while the exceptions are to be construed narrowly."); Cruz v. Leviev Fulton Club, LLC, --- F. Supp. 2d ---, 2010 WL 1948226, *1 (S.D.N.Y. May 14, 2010) ("While the ILSA's text refers to the sale of 'lots,' its protections apply to the sale of condominiums as well." (citations omitted)); Bodansky v. Fifth on the Park Condo, LLC, -- F. Supp. 2d --, 2010 WL 334985, *2 n. 6 (S.D.N.Y. Jan. 29, 2010); Beauford v. Helmsley, 740 F. Supp. 201, 209 (S.D.N.Y. 1990). Additionally, Congress's (1) failure to revise ILSFDA as a result of HUD's interpretation of the statute and (2) 1978 addition of "condominium" to the "improved lot" exemption (without any other revisions that might have limited the Act's application to condominiums), strongly suggest that Congress has acquiesced to HUD's interpretation. The Court sees no need to disturb this trend and holds that condominium units are covered by the provisions of ILSFDA.

*2. The units at issue are not exempt under the "improved lot" exemption*[3]

HUD has issued regulations construing the "improved lot" exemption of § 1702(a)(2): "for a condominium unit sale to be exempted from the act, it must accordingly qualify for exemption: i.e., either it must be completed before it is sold, or it must be sold under a contract obligating the seller to erect the unit within two years from the date the purchaser signs the contract of sale." 38 Fed. Reg. 23,866 (Sept. 4, 1973).

Defendant argues that because there was an office building with working utilities located on the land at the time of sale, the land was therefore "improved" and was thus subject to the first portion of § 1702(a)(2). Specifically, Defendant argues that the first portion of § 1702(a)(2) — "the sale or lease of any improved land on which there is a residential, commercial,

---

[3] It is undisputed that, assuming that ILSFDA applies to condominium units, ILSFDA generally applies to the specific condominium units at issue. Specifically, it is clear that the condominium is comprised over 100 or more units, that 20 Pine sold units as part of a common promotional plan, that 20 Pine engaged in interstate land sales, and that 20 Pine used the instrumentalities of interstate commerce in its land sales.

6

condominium, or industrial building" — implies that if there is any structure on the land at issue, a sale transaction involving that land qualifies for the exemption.

Defendant's argument is not in line with the exemption's construction by HUD or the application by the courts. In construing the term "complete," HUD guidelines state that "[f]or a building or unit to be considered complete, it must be physically habitable and usable for the purpose for which it was purchased. A residential structure, for example, must be ready for occupancy and have all necessary and customary utilities extended to it before it can be considered complete." 61 Fed. Reg. 13,596 (March 27, 1996). In addition, in Beauford, the court specifically discusses the fact that *completed* condominium *units* are exempted from ILSFDA, implicitly distinguishing such units from non-completed units, which are not exempt from the requirements of the Act. See 740 F. Supp. at 210.

Although there was an office building on the land at the time of the sales at issue here, it is undisputed that the condominium units themselves were not "physically habitable and usable for the purpose for which [they were] purchased." See 61 Fed. Reg. 13,596 (March 27, 1996). In fact, the specific units at issue did not physically exist in any form.[4] Put differently, the "lot" at issue in this case is not the land on which the condominium building sits, but rather the space within the building envelope in which the specific condominium units were to be built. Although a sale of the land on which the 20 Pine condominium building is located, otherwise covered by ILSFDA, would not be subject to ILSFDA because of the commercial building sitting on it at the time of sale, the condominium units themselves were not complete at the time the purchase agreements were signed, and were therefore not "improved." As a result, sales of the individual lots, like the transactions here, are not exempted from ILSFDA under § 1702(a)(2).

---

[4] It is also undisputed that there was no clause in the contract obligating 20 Pine to complete the units within two years. As a result, the "two-year" portion of the "improved lot" exemption does not apply here.

Accordingly, ILSFDA applied to the sale of the condominium units and, as it is undisputed that property reports were not provided to Plaintiffs and that notice of the right of rescission under § 1703(c) was not listed in the Plaintiffs' purchase agreements, it is clear that the Defendant violated ILSFDA.

**B. Plaintiff Nu-Chan Has Standing to Maintain This Action**

Defendant argues that Nu-Chan does not have standing to bring any claim under ILSFDA because Nucatola was the actual purchaser of the property, and Nu-Chan only an assignee of the purchase agreement. Although Nucatola is one of two members of Nu-Chan LLC, Defendant argues that this distinction is fatal to Nu-Chan's claims.

Defendant relies on several cases that stand for the proposition that only the party that directly bought from the seller can pursue an ILSFDA claim against that seller. See, e.g., Gibbes v. Rose Hill Plantation Dev. Corp., 794 F. Supp. 1327, 1333-34 (D.S.C. 1992). Nu-Chan cites to Trotta v. Lighthouse Point Land Co., 551 F. Supp. 2d 1359 (S.D. Fla. 2008). In Trotta, an LLC entered into a purchase agreement with a seller, and then sold its rights under the purchase agreement to one of the individual members of the LLC. Id. at 1361. In holding that the individual member of the LLC had standing to pursue an ILSFDA claim against the seller, the Trotta court said that the LLC was merely the "alter ego" of the individual member. Id. at 1366. Specifically, the court said that "the assignee (plaintiff) did deal with the seller as the original buyer, albeit through a limited-liability company rather than as an individual. Under these circumstances, the court finds that plaintiff does have standing to pursue his ILSA claim against defendants." Id.

While Defendant argues that Jeffrey Chan, Nucatola's business partner in Nu-Chan, was not involved in the original transaction, the logic of the Trotta decision is still applicable. It is

8

clear that Chan was in discussions with Nucatola regarding purchasing the condominium unit prior to the signing of the agreement and that Nucatola was the sole point of contact between 20 Pine and Nu-Chan.  (Def. 56.1 Stmt. ¶ 45; Pl. 56.1 Resp. ¶ 45.)  In addition, it appears that 20 Pine understood the structure of the transaction with respect to Nucatola, Chan, and Nu-Chan when the original purchase took place.  Under these circumstances, and as in Trotta, Nu-Chan and Nucatola are one and the same.  As a result, Nu-Chan has standing to pursue its ILSFDA claim against Defendant.

**C. Plaintiffs' Claims for Rescission under § 1703(c) are Time-Barred**

*1. Plaintiffs did not demand rescission during the requisite two-year period*

15 U.S.C. §§ 1703 and 1711, and the relevant case law make clear that an automatic rescission claim must comply "with both § 1703(c)'s two-year limit for exercising the right of rescission and § 1711(b)'s three-year limit for filing suit based on the seller's refusal to honor said rescission."  Taylor v. Holiday Isle, LLC, 561 F. Supp. 2d 1269, 1273 (S.D. Ala. 2008).  A claim for automatic rescission must be made within two years of the signing of the purchase agreement.  Any other interpretation would lead to the untenable result of effectively reading the two-year requirement out of the statute.

It is clear that Plaintiffs did not demand rescission during the statutory two-year period. Nucatola signed the Nu-Chan purchase agreement on January 20, 2006 and did not demand rescission until January 5, 2009, almost three years later.  (Fleishman Aff., Ex. E, J.)  Likewise, Chiu signed the purchase agreement on June 19, 2006, and did not demand rescission until February 4, 2009, over two years later. (Fleishman Aff., Ex. D, I.)  As a result, it is clear that Plaintiffs failed to comply with § 1703(c)'s time limitation for automatic rescission.

*2. Lack of notice of right to rescission does not save Plaintiffs' automatic rescission claim*

Plaintiffs argue, however, that because the purchase agreement did not provide notice of Plaintiff's rescission rights pursuant to § 1703(c), plaintiffs should not be precluded from exercising their automatic rescission rights.  Specifically, Plaintiffs urge this Court to extend the two-year automatic rescission period to the limits of the three-year statute of limitations under § 1711. Plaintiffs cite Jankus v. The Edge Investors, LLP, 619 F. Supp. 2d 1328 (S.D. Fla. 2009) ("Jankus I"), but the Court that issued the opinion has since withdrawn it.  Jankus v. Edge Investors, L.P., 650 F. Supp. 2d 1248 (S.D.Fla. 2009) ("Jankus II").  In Jankus I, the court determined that the two-year time limitation did not operate as a statute of limitations, but was rather a condition precedent that was waived if the seller did not include the notice in the statute. This argument, however, is contrary to all other precedent and would compel the Court to add elements to ILSFDA that Congress simply did not see fit to include.  As the court in Taylor said: "[N]othing in the ILSFDA states that failure to disclose the right to rescind in the purchase agreement obviates, tolls, or extends the two-year deadline for rescission. . . . [T]he Court cannot concur with plaintiffs' suggestion that a developer's failure to provide notice of the right of rescission in a purchase agreement eliminates the two-year requirement for rescission under § 1703(c)." Taylor, 561 F. Supp. 2d at 1274–75.

Additionally, a seller which does not provide a property report to the buyer, is obviously unlikely to provide the requisite notice in the purchase agreement.  The fact that Congress did not specifically provide for an extension of the two-year rescission right in such circumstance indicates Congress's unwillingness to do so, and likely implies that Congress felt that the additional remedies afforded under § 1709(a) and (b), discussed *infra*, are sufficient under these circumstances.  See Life Receivables Trust v. Syndicate 102 at Lloyd's of London, 549 F.3d 210,

10

216 (2d Cir. 2008) ("[W]e must interpret a statute as it is, not as it might be, since courts must presume that a legislature says in a statute what it means and means in a statute what it says." (citation omitted)).

**D. Plaintiff's Claims for Equitable Relief and Damages Under § 1709(b)**

Although Plaintiffs' claims for automatic rescission under § 1703(c) are clearly time-barred, their claims under § 1709(b) for equitable remedies and/or damages from violations of § 1703(c) are still actionable because they are within three years of the dates of the purchase agreements. Stated differently, although Plaintiff cannot achieve automatic rescission simply by virtue of the fact that Defendant failed to provide them with a property report and notice of their right to rescind, they may still attempt to prevail on a claim for equitable rescission or damages by showing that they were harmed by Defendant's violations and/or that equitable rescission would be just and proper under the circumstances.

Several courts have attempted to untangle the ILSFDA web of violations and remedies. In Taylor, 561 F. Supp. 2d 1269, the court dismissed the plaintiff's automatic rescission claim as time-barred, but found that the plaintiff's claims for damages were still actionable. Further, in Plant v. Merrifield Town Center Ltd. P'ship, No. 1:08cv374, 2009 WL 2225415, *3 n.6 (E.D. Va. July 21, 2009) ("Plant I"), the court did not allow Plaintiff's to pursue automatic rescission as a result of the two-year limitation, but allowed claims for equitable rescission to continue, provided that Plaintiff could establish a basis for such a remedy.[5]

ILSFDA essentially provides two avenues for rescission where a seller-defendant does not comply with the property report and notice requirements of § 1703(c). First, where defendant

---

[5] "Federal common law allows rescission 'where the equities of the situation so demand.'" Plant v. Merrifield Town Center Ltd. P'ship, No. 1:08cv374, --- F. Supp. 2d ---, 2010 WL 1039875, *10 (E.D. Va. March 18, 2010) ("Plant II") (quoting Griggs v. E.I. DuPont de Nemours & Co., 385 F.3d 440, 449 (4th Cir. 2004)).

11

fails to provide a property report and the buyer demands rescission within two years, the buyer may automatically rescind and the courts will enforce that right. Second, provided for under § 1709(b), plaintiff must show a basis for equitable relief — i.e., that § 1703(b), (c), or (d) was violated, and that the equities demand rescission of the purchase agreement. These two avenues are exclusive of one another, with only the second one continuing to be available where the first avenue is time-barred after two years. Plant I clearly outlines the interaction between these two routes to rescission, explaining that allowing a rescission remedy when automatic rescission is time-barred does not obviate the time restrictions of ILSFDA:

> Importantly, permitting plaintiffs to pursue the equitable remedy of rescission on a proper showing does not read the time requirements of § 1703(b), (c), and (d) out of those subsections. Rather, the time limitations in those subsections govern those circumstances in which an aggrieved purchaser seeks to enforce an *automatic, unconditional* right to revoke consistent with those subsections' requirements. By contrast, the three-year limitation period of 15 U.S.C. § 1711 governs those circumstances in which a purchaser seeks rescission that is not automatic, but must be supported by proper proof. The scant case law addressing these issues has incorrectly presumed that the only ILSFDA revocation or rescission remedies are those automatic revocation rights in § 1703(b), (c), and (d). In this regard, § 1709's plain terms make pellucidly clear that equitable remedies (such as rescission and return of deposits) may be ordered, *where justified by the facts of a particular case*, for § 1703 violations such as those alleged here.

Plant, 2009 WL 2225415 at *3 n.6 (emphasis in original).

Additionally, a plaintiff may also bring a claims for damages under § 1709(b), whereby they must prove that they were in some way harmed by a violation of § 1703(b), (c), or (d) and are therefore entitled to a damage remedy. See Taylor, 561 F.Supp.2d 1269. "The remedies available to purchasers in such a suit include damages, taking into account the amount the purchasers actually paid, and may also include interest, court costs, reasonable attorneys' fees and the like." Murray v. Holiday Isle, LLC, 620 F. Supp. 2d 1302, 1310 n.13 (S.D. Ala. 2009). In order to recover damages under § 1709(a) or (b) where the developer did not give notice of the rescission right, the buyer must prove (1) that the developer did not give notice of the buyer's

right of rescission; (2) that the buyer did not learn about the rescission right until after the two-year period had expired; (3) that the buyer would have exercised the rescission option during the two-year period, if the developer had informed them of the right; and (4) that the buyer has incurred damages as a result. See id. at 1313; see also Princeton Homes v. Virone, 612 F.3d 1324, 1328 n.1 (11th Cir. 2010).

Here, Plaintffs have brought claims for rescission and for damages under ILSFDA as a result of Defendant's failure to provide a property report and notice of their right to rescind their purchase agreements within the requisite two-year period. Although their claims for automatic rescission are time-barred, their claims for equitable rescission and damages under § 1709(b) are not.[6] Although Plaintiffs' only evidence to support their claims is their own declarations demonstrating their own states of mind during the two-year automatic rescission period, (Second Supp. Decl. of Chiu ¶ 10, Second Supp. Decl. of Nucatola ¶ 10.), these declarations create a genuine issue of material fact as to whether Plaintiffs were injured by Defendant's failure to give them notice of their rescission right, and are therefore sufficient to defeat Defendant's motion for summary judgment.

## CONCLUSION

For the foregoing reasons:

**(1)** Plaintiffs' motion for summary judgment is DENIED.

**(2)** Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART:

**(a)** With respect to Plaintiffs' claims regarding the automatic rescission right under 15 U.S.C. §1703(c), Defendant's motion for summary

---

[6] Generally speaking, plaintiffs may also bring claims under § 1709(a) for damages and equitable relief arising from defendant's violations of § 1703(a)(1)(B) for not providing the property report. However, in the instant case, Plaintiffs do not claim that they were in any way injured by *the fact that they never received the property report* — only that they were harmed because they *did not know of their right to rescind the contract*.

13

>judgment is GRANTED.
>
>**(b)** With respect to Plaintiffs' claims for damages and equitable remedies under 15 U.S.C. § 1709(b), Defendant's motion for summary judgment is DENIED.
>
>**(c)** Defendant's motion for summary judgment on its counterclaims is DENIED.

The Clerk of Court is directed to close the motions at docket numbers 23 and 26.

Dated: New York, New York
       September 30, 2010

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

14